Filed 7/30/26  City of L.A. v. IBEW, Local 18 CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| CITY OF LOS ANGELES,<br><br>    Petitioner and Appellant;<br><br>INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 18,<br><br>    Real Party in Interest and Appellant,<br><br>        v.<br><br>AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES et al.,<br><br>    Real Party in Interest and Respondent;<br><br>CITY OF LOS ANGELES EMPLOYEE RELATIONS BOARD,<br><br>    Respondent. | B336981 c/w B340065<br>(Los Angeles County Super. Ct. No. 22STCP03070) |

APPEALS from a judgment and an order of the Superior Court of Los Angeles County, Curtis A. Kin, Judge. Affirmed and remanded.

Kronick, Moskovitz, Tiedemann & Girard, David W. Tyra and Alec D. Tyra for Petitioner and Appellant.

Schwartz, Steinsapir, Dohrmann & Sommers and Daniel E. Curry for Real Party in Interest and Appellant.

Rothner, Segall & Greenstone, Hannah Weinstein and Julia Harumi Mass for Real Party in Interest and Respondent.

————————————————

Beginning in 1980 the Los Angeles Department of Water and Power (DWP) and the City of Los Angeles (City) maintained a reciprocal retirement benefits arrangement (Reciprocity or the Reciprocal Arrangement). This arrangement allowed employees transferring between DWP and the City to carry their pension service credits between the two retirement systems. In 2010, DWP decided to withdraw from Reciprocity. In 2013 the City then adopted Ordinance No. 182824 (the 2013 Ordinance), which suspended the Reciprocal Arrangement.

City employees and their unions[1] (collectively the Coalition) filed an unfair labor relations practice claim before the

—————————

[1] The Coalition of City of Los Angeles Unions, which represents current and former City employees whose retirement benefits are administered by the Los Angeles City Employees' Retirement System, consists of: American Federation of State, County and Municipal Employees, District Council 36 and its Local Unions 741, 901, 2006, 2626, 3090, and 3672; Service Employees International Union, Local 721; Laborer's

2

Los Angeles Employees Relations Board (ERB).  The Coalition alleged the City failed to bargain or meet and confer with the Coalition over the suspension of the Reciprocal Arrangement. The ERB agreed the City violated its duty to engage in "effects bargaining" regarding possible ways to mitigate the effects of the suspension of the Reciprocal Arrangement.  The ERB ordered the City to bargain with the Coalition and to make whole Coalition-represented employees who sustained losses, including reduced pension or other benefits, resulting from the City's unilateral implementation of the suspension, until the City had satisfied its obligation to bargain.  The trial court then denied the City's petition for writ of mandate challenging the ERB's order and granted the Coalition's petition seeking to enforce it.

The City does not dispute that it had a duty to bargain over the effects of ending Reciprocity.  Instead, it challenges only the remedy ordered by the ERB.  It argues the ERB lacked authority to order make-whole relief and, even if it possessed that authority, fashioned an improper remedy that failed to restore the parties to the status quo existing when the City's bargaining obligation arose.  The City further contends the ERB's order is vague and overbroad, and violates separation-of-powers principles.  Finally, it challenges the trial court's postjudgment award of attorney fees under Code of Civil Procedure section 1021.5.  We affirm.

---

International Union of North America, Local 777; Los Angeles and Orange County Building & Construction Trades Council; International Union of Operating Engineers, Local 501; and Teamsters Union, Local 911.

# FACTUAL AND PROCEDURAL BACKGROUND

A.   *The Different Los Angeles City Retirement Plans and the*
     *Reciprocal Arrangement*

The City provides retirement benefits to its employees through different retirement systems, two of which are relevant here.  One is the Los Angeles City Employees' Retirement System (LACERS), for most City officers and employees.  (Los Angeles City Charter, §§ 500, 1102, subd. (a), 1150.)[2]  The Los Angeles City Council (City Council) has authority to establish or modify LACERS benefits under the procedures set forth in the Charter.  (Charter, § 1168.)  The terms of the LACERS plan are codified in the Los Angeles Administrative Code.[3]  (Charter, § 1150, subd. (b).)

The DWP provides retirement benefits through the Water and Power Employees' Retirement Plan (WPERP).  (Charter, § 603.)  WPERP operates autonomously, with an independent source of funding and a separate budget.  (Charter § 603.)  Like the City with respect to LACERS, DWP has authority to modify WPERP benefits, and the WPERP Board of Administration manages and administers the plan and its funds.  (Charter, §§ 1102, subd. (c), 1104, subd. (c), 1106, 1186.)

Beginning around 1980, LACERS and WPERP entered into an arrangement governing the transfer of retirement benefits between the two systems.  In January 1980, the City Council enacted former section 4.1060 to implement the arrangement between LACERS and WPERP.  This code section was later

---

[2]   Charter references are to the Los Angeles City Charter.

[3]   Undesignated section references are to the Los Angeles Administrative Code.

4

renumbered without substantive change as section 4.1095. Under this arrangement, employees transferring between DWP and any City department (in either direction) could transfer their employee pension contributions and interest on those contributions to the new retirement system. The receiving retirement system treated the transferring employees as if they had spent their entire City career under that retirement system.

Both LACERS and WPERP are defined-benefit plans that calculate retirement benefits based on an employee's years of service, compensation, and a multiplier. (§§ 4.1005, 4.1007, 4.1080.7.) As a result, the number of years of credited service directly affects the amount of an employee's pension. Reciprocity allowed the employee to transfer credit for years of employment from one system to another, thereby increasing the employee's pension.

The Reciprocal Arrangement contemplated that both LACERS and WPERP would participate. Specifically, section 4.1095, subdivision (k), reads: "**Reciprocity of Benefit Provisions and Conditions Affecting this Section.** It is the intent and purpose of this section to provide, or help to provide, portability between the LACERS and the WPERP. The achievement of complete portability of benefits is dependent upon appropriate action by the governing body of the WPERP. Should the implementation of any provisions of this section be possible only if some specific action is taken by the WPERP, then, and as to such provisions only, the effect of this section shall be suspended until appropriate action has been taken by the WPERP."

B.      *WPERP's Suspension of the Reciprocal Arrangement and the 2013 Ordinance*

In 2010 the WPERP Board commissioned a study of Reciprocity that determined more employees transferred from the City to DWP than in the opposite direction, increasing WPERP's unfunded liability by approximately $183 million. The WPERP Board voted to suspend Reciprocity. The City Council voted to veto WPERP's changes, which led to litigation about whether WPERP needed the approval of the City Council to change this aspect of its retirement plan. (*Romero, et al. v. City Council of the City of Los Angeles*, *etc., et al.*, LASC Case No. BC449834 (*Romero*).) The Coalition was not a party to the *Romero* litigation. Only the City, the DWP, and International Brotherhood of Electrical Workers Local 18 (Local 18), the union representing employees who receive their retirement benefits from WPERP, were parties to the *Romero* litigation.

That litigation ultimately resulted in a settlement that was finalized on November 18, 2013. The City agreed to suspend Reciprocity so that "each retirement plan (WPERP and LACERS) will be fiscally responsible only for the years of service and final average salary the member earned while a member of that retirement plan." The City would continue to recognize WPERP service only to determine retirement eligibility, consistent with Internal Revenue Service regulations.

In October and November 2013 the City Attorney sent to the City Council drafts of an ordinance to amend the provisions of the Administrative Code governing LACERS "to suspend reciprocity … and to make related changes." The City Attorney advised that the proposed ordinance "changes retirement benefits." The amendments provided that retirement benefits

6

would be calculated based only on service in LACERS-covered positions, while WPERP service would count only for the purpose of determining an employee's eligibility to retire.

On November 7, 2013, the Coalition notified the City's Chief Administrative Officer (CAO) that, under state law and the City's Employee Relations Ordinance (ERO; § 4.800 et seq.), the City was required to bargain over the suspension of Reciprocity. The next day the City Council directed the CAO to meet with the Coalition. The CAO took the position that the City would provide information and answer questions but had no duty to formally meet and confer. (In the later proceedings before the ERB, the City conceded its duty to bargain arose no later than November 7, 2013, when the proposed ordinance was introduced and the Coalition demanded bargaining.) On December 9, 2013, the Coalition sent a follow-up letter identifying what it understood to be the effects of suspending Reciprocity on its members.

On December 10, 2013, the City Council adopted the 2013 Ordinance, effective January 1, 2014, "to suspend reciprocity between the Los Angeles City Employees' Retirement System and Water and Power Employees' Retirement Plan, and to make related changes." Under the Ordinance, LACERS no longer credited prior WPERP service when calculating retirement benefits, except to determine retirement eligibility (i.e., that employees have worked enough years to qualify for retirement).

The 2013 Ordinance allows employees moving from a WPERP-covered position to a LACERS-covered position to "purchase" their WPERP service for LACERS purposes, so that their retirement benefits are based on the aggregate of their LACERS-covered and WPERP-covered service. (See § 4.1020.1.) To do so, the employee must pay both the employee and employer

7

contributions that would have been made to LACERS during the period of WPERP employment. (*Ibid.*) For example, an employee earning $100,000 annually who seeks to purchase two years of WPERP service would have to pay LACERS $60,000. (*Ibid.*) The City stipulated that a Senior Clerk Typist who worked 15 years in a LACERS-covered position, transferred to a WPERP-covered position for 15 years, and then retired would receive $16,195.16 less annually under the 2013 Ordinance than under Reciprocity, and $12,426.71 less than if the employee had remained in a LACERS-covered position.

C. *The Coalition Files Unfair Employee Relations Practice Charges Against the City Before the ERB*

In the City of Los Angeles, the ERO, section 4.800 et seq. of the Los Angeles Administrative Code, governs labor relations between the City and its employees. The ERO requires the City to meet and confer with employee organizations over wages, hours, and other terms and conditions of employment, and makes it an unfair employee relations practice to fail to do so. (See §§ 4.830, subd. (a), 4.860, subd (a)(3).) The ERO also established the ERB, the City administrative agency responsible for resolving labor disputes. (See § 4.810(a).) Section 4.810, subdivision (f), of the ERO identifies the ERB's "powers and duties." The list contains nine subdivisions. Relevant here, subdivision (f)(4) states one of the ERB's powers is "[t]o investigate and determine the validity of charges of unfair employee relations practices, to make findings, and to issue orders to cease and desist which are not in conflict with other provisions of law." Subdivision (f)(12) states the ERB also has the power "[t]o perform such other duties as may be necessary to carry out the Board's responsibilities under the provisions of this chapter."

On November 21, 2013, the Coalition filed unfair employee relations practice charges against the City before the ERB based on the City's refusal to bargain over the suspension of Reciprocity.  The Coalition alleged the City "violated its duty to negotiate in good faith" with the Coalition "before taking unilateral action to implement changes in reciprocity, retirement benefits, retiree medical benefits, and transfer and promotion rights."  It alleged these actions violated sections 4.830, subdivision (a), 4.857, and 4.860, subdivisions (a)(1) and (3), and constituted unfair employee relations practices.  As remedies, the Coalition sought: "an order directing that the City (a) cease and desist from its refusal to meet and confer with the Coalitions Unions concerning matters within the scope of representation, including reciprocity between the LACERS and WPERP and the benefits resulting from reciprocity; (b) cease and desist from its implementation of, and immediately rescind and give no effect to, any other unilateral changes in retirement and retiree medical benefits and/or transfer and promotion rights of the employee classifications represented by the Coalitions Unions; (c) cease and desist from any other efforts to modify retirement benefits and/or transfer rights for represented classifications without meeting and conferring with the Coalition Unions; (d) cease and desist from interfering with, denying or violating rights protected by the ERO; (e) make whole any employee for losses resulting from the City's unlawful actions as alleged herein; and (f) post notices stating that the City has violated the ERO."

D.    *The Hearing Officer's Findings*

An ERB-appointed hearing officer conducted a series of evidentiary hearings culminating in three reports.  The hearing officer concluded the City violated the ERO by failing to meet and

9

confer and bargain over the *effects* of ending Reciprocity, but not the *decisions* to withdraw its opposition to WPERP's suspension of Reciprocity in the *Romero* litigation and to end Reciprocity by adopting the 2013 Ordinance.[4]  He found the City had some discretion over how the suspension of Reciprocity would be implemented and was obligated to negotiate with the affected employees on these issues.  For instance, the end of Reciprocity affected not only WPERP service credit, but also related issues such as retiree health subsidies and protected leave.

  With respect to the remedy, the hearing officer concluded that "restoring the *status quo ante*" was not appropriate because "such an order would require the City to do more than the City was ever required to do," and WPERP was not a party to the proceedings and could not be compelled to participate.  Although a complete restoration of the pre-*Romero* system was therefore impracticable, the hearing officer concluded the City's "blatant disregard" of its bargaining obligation required a remedy that would "empower the Coalition to bargain for benefits that are equivalent to what existed prior to the mess that followed WPERP's decision to end the statutory reciprocity scheme."  He stated, "Here, that means a bargaining order and a make-whole remedy for any employee who can show a loss of income, pension, or other benefits as a consequence of the City's violation of its bargaining obligation."  At the same time, he "reject[ed] the

---

[4]     He also noted the City had an independent obligation to bargain with the Coalition Unions over the implementation of the terms of the settlement agreement in the *Romero* litigation because the Coalition's memorandum of understanding had a requirement that the City bargain over changes in pension benefits.

Coalition's request that the Board declare various provisions in the Administrative Code void and unenforceable."

E.     *The ERB's Final Decision and Order*

In June 2022, the ERB issued its final decision and order. With limited exceptions, the ERB adopted the hearing officer's "factual findings, reasoning, and legal conclusions."  It agreed the City had no duty to bargain over the City's decision to withdraw its opposition to WPERP's decision to suspend Reciprocity.  It also concluded "the City was obligated under … [s]ection 4.1095, as it existed prior to January 1, 2014, to stop counting employees' prior WPERP service for LACERS benefit purposes when WPERP suspended reciprocity," but the City still had a duty to bargain the effects of the end of Reciprocity.

In adopting the hearing officer's reasoning and recommendations regarding a make-whole remedy, the ERB emphasized a make-whole remedy in an effects bargaining case like this one should be of limited duration, with the make-whole remedy ending when the bargaining process ends.

The ERB ordered the City to:

- "meet and confer in good faith with the Coalition about the effects of WPERP's suspension of reciprocity," including:
  - "Whether and, if so, how WPERP service should be counted by LACERS in determining eligibility for disability retirement and the amount of disability allowance;"
  - "Whether and, if so, how prior WPERP years of service should be recognized by LACERS for Benefits purposes;"

11

- o "How the LACERS retiree health subsidy should be treated for individuals transferring from LACERS to WPERP covered positions;"
- o "How long employees in WPERP positions who are on protected leave from LACERS positions should have to decide on returning to LACERS positions;" and
- o "Whether and how the end of reciprocity impacted transfers."
- "make whole Coalition-represented employees who have sustained any losses (including a reduced pension or other benefits) due to unilateral changes implemented on or after January 1, 2014 to the manner in which WPERP years of service are treated or who sustain any such losses in the future ... from the date any impacted employee began to experience harm (i.e., January 1, 2014) until the earliest of:
  - o the date the Parties have ceased negotiating because they have reached agreement as part of complying with this Order;
  - o the date the Parties have reached impasse and exhausted any post-impasse procedures that may be required or agreed upon; or
  - o failure by the Coalition to request bargaining or to bargain in good faith as a part of complying with this Order;" and
- "cease and desist from enforcing or otherwise applying against Coalition-represented employees the Los Angeles Administrative Code provisions that address, for any purpose, how to treat periods of service with WPERP for employees who move from a WPERP-

covered position to a LACERS-covered position on or after January 1, 2014 until the earliest occurrence of" the conditions described regarding the parties' bargaining obligations above.

F.      *The Trial Court Proceedings*

In August 2022 the City filed a petition for writ of mandate under Code of Civil Procedure section 1094.5.  The City did not challenge the ERB's determination that it violated the ERO by failing to bargain over the effects of ending Reciprocity.  Instead, it challenged only the ERB's remedial order, arguing the ERB lacked authority to order make-whole relief and that the directive the City cease and desist from enforcing provisions of the Administrative Code exceeded the ERB's authority, was unsupported by its findings, and was impermissibly overbroad.

The Coalition filed a cross-petition under Code of Civil Procedure section 1085, seeking an order requiring the City to comply with the ERB's order.[5]

In November 2023 the trial court denied the City's petition and granted the Coalition's.  The court concluded that section 4.810, subdivision (f)(12), of the ERO—which authorizes the ERB to "perform such other duties as may be necessary to carry out [its] responsibilities"—empowered the ERB to order make-whole relief.  It further determined make-whole relief was an appropriate remedy for an effects-bargaining violation.  The

---

[5]      Local 18 also filed a cross-petition under Code of Civil Procedure section 1094.5, making many of the same arguments as the City in challenging the ERB's decision.  On appeal, Local 18 joins in the City's arguments and otherwise does not advance any of its own arguments.

13

court rejected the City's separation-of-powers challenge, reasoning the ERB's order did not compel legislative action and that section 4.1095, subdivision (k), did not "expressly restrict the City's ability to credit WPERP service" going forward. Finally, the court determined the ERB's cease-and-desist order was not overbroad or vague.

The court also granted the Coalition's motion for attorney fees under Code of Civil Procedure section 1021.5.

The City timely appealed both the judgment denying its writ petition and the order awarding attorney fees.

## DISCUSSION

A. *Effects Bargaining and the ERB's Exclusive Authority over Alleged Labor Law Violations by the City*

The Meyers-Milias-Brown Act (MMBA), Government Code section 3500 et seq., governs collective bargaining for local government employees in California. (*County of Los Angeles v. Los Angeles County Employee Relations Com.* (2013) 56 Cal.4th 905, 915-916 (*County of Los Angeles*); *Singletary v. International Brotherhood of Electrical Workers, Local 18* (2012) 212 Cal.App.4th 34, 41 (*Singletary*).) "[T]he MMBA imposes 'mandatory bargaining requirements' for employer actions within the 'scope of representation,' i.e., with '*significant* effect on the "wages, hours, and other terms and conditions of employment" of the bargaining-unit employees.' [Citations.] This duty to bargain requires the public employer ' "to refrain from making unilateral changes in wages and working conditions until the employer and employee association have bargained to impasse." ' " (*Los Angeles County Prof. Peace Officers Assn. v. County of Los Angeles* (2026)

14

119 Cal.App.5th 1091, 1098-1099 (*Los Angeles County Prof. Peace Officers*).)

"Employers are also required to bargain over the effects and implementation of changes that fall outside the scope of representation but have reasonably foreseeable impacts on issues within the scope of representation." (*Trustees of California State University v. Public Employment Relations Bd.* (2026) 118 Cal.App.5th 90, 103; accord, *Los Angeles County Prof. Peace Officers*, *supra*, 119 Cal.App.5th at p. 1096, fn. 1 [" 'Effects bargaining' refers to an employer's duty under the [MMBA] to 'bargain regarding the "effects of a decision that has a foreseeable effect on matters within the scope of representation, even where the decision itself is not negotiable." ' "]; see *International Assn. of Fire Fighters, Local 188, AFL-CIO v. Public Employment Relations Bd.* (2011) 51 Cal.4th 259, 276-277; *Stationary Engineers Local 39 v. City of Sacramento* (2013) PERB Dec. No. 2351-M, p. 47 [even for employer actions not within the scope of representation, employer has a duty to bargain "*before* implementing a new or changed policy" that will "hav[e] a foreseeable effect on matters within the scope of representation"].) In this event, "the employer must provide notice and an opportunity to meet and confer *after* it has reached a firm decision but before the decision is implemented." (*Trustees*, at p. 104.) "[M]atters deemed subject to effects bargaining include severance pay, vacation pay, seniority, and pensions." (*Claremont Police Officers Assn. v. City of Claremont* (2006) 39 Cal.4th 623, 634.) As stated, the City does not challenge the ERB's determination that it violated its obligation to bargain with the Coalition regarding the effects of the suspension of Reciprocity.

15

In most parts of California, unions bring labor law violations under the MMBA, such as violations of the obligation to bargain, before the California Public Employment Relations Board (PERB) (Gov. Code, § 3509, subd. (b)), and PERB is " 'vested with the authority to interpret … the MMBA' " (*Singletary*, *supra,* 212 Cal.App.4th at p. 42, fn. 6).  However, the MMBA carves out an exception for the City:  "the employee relations commissions established by, and in effect for … the City of Los Angeles pursuant to [Government Code] Section 3507," i.e., the ERB, has "the power and responsibility to take actions on … all unfair practices [committed by the City], and to issue determinations and orders as [the ERB] deem[s] necessary, consistent with and pursuant to the policies of" the MMBA.  (Gov. Code, § 3509, subd. (d); see *Singletary*, at p. 40, fn. 4.)[6] Accordingly, the ERB, not PERB, has jurisdiction over the City's labor law violations, but, as the City acknowledges, the ERB's

---

[6] "Section 3507, subdivision (a) [of the Government Code] authorizes public agencies to adopt rules and regulations to implement the provisions of the MMBA, and in 1971, the City adopted [the ERO] for this purpose." (*Singletary*, *supra,* 212 Cal.App.4th at p. 39.)  As discussed, the ERO created the ERB and authorized it to, among other things, determine the validity of charges of unfair employee relations practices.  (ERO, § 4.800; *City of Los Angeles v. City of Los Angeles Employee Relations Bd.* (2016) 7 Cal.App.5th 150, 159-160.)  In 1968 Los Angeles County created its own employee relations commissions called the Los Angeles County Employee Relations Commission (ERCOM) that has the exclusive authority to implement the MMBA for Los Angeles County agencies.  (Gov. Code, § 3509, subd. (d); *City of Los Angeles*, at p. 159.)  Thus, the MMBA carves out exceptions for both the City and the County of Los Angeles. (Gov. Code, § 3509, subd. (d); *Singletary*, at p. 43.)

16

orders must be consistent with the policies of the MMBA as interpreted and administered by PERB. (See *County of Los Angeles*, *supra,* 56 Cal.4th at p. 917 [discussing parallel exception for ERCOM in Los Angeles County].) " 'The MMBA deals with a matter of statewide concern, and its standards may not be undercut by contradictory rules or procedures that would frustrate its purposes. [Citations.] Local regulation is permitted only if "consistent with the purposes of the MMBA." ' " (*Id*. at pp. 923-925.)

B.     *Standard of Review*

" 'In reviewing a trial court's judgment on a petition for writ of mandate, the appellate court is required to exercise independent judgment on legal issues.' " (*Los Angeles County Prof. Peace Officers*, *supra,* 119 Cal.App.5th at p. 1099.) "A court exercises its independent judgment reviewing an agency's interpretation of the law, applying any appropriate deference to the agency's legal interpretation." (*Shear Development Co., LLC v. California Coastal Com*. (2026) 19 Cal.5th 334, 350.)

"Although 'courts retain final authority to " 'state the true meaning of [any] statute,' " ' they ' "generally defer to PERB's construction of labor law provisions within its jurisdiction," ' " including the MMBA. (*Oakland Unified School Dist. v. Public Employment Relations Bd*. (2025) 112 Cal.App.5th 725, 743; accord, *Boling v. Public Employment Relations Bd*. (2018) 5 Cal.5th 898, 911-912 (*Boling I*); see *Association for Los Angeles Deputy Sheriffs v. County of Los Angeles* (2024) 106 Cal.App.5th 982, 997, fn. 5 ["PERB is ' " ' " 'one of those agencies presumably equipped or informed by experience to deal with a specialized field of knowledge, whose findings within that field carry the authority of an expertness which courts do not possess and

17

therefore must respect.' " ' " ' [Citation.] Thus, '[c]ourts generally defer to PERB's construction of labor law provisions within its jurisdiction.' "].) We follow PERB's statutory interpretation " 'unless it is clearly erroneous.' " (*Boling I*, at p. 911; accord, *People ex rel. Internat. Assn. of Firefighters, etc. v. City of Palo Alto* (2024) 102 Cal.App.5th 602, 617 (*Internat. Assn. of Firefighters*).) Decisions from PERB interpreting the MMBA are highly persuasive on legal matters within PERB's area of expertise. (*Association for Los Angeles Deputy Sheriffs*, at p. 996; *County of Los Angeles*, *supra*, 56 Cal.4th at p. 917.)

Although *Boling I* addresses deference owed to PERB's construction of labor laws, not the ERB's, the ERB is the agency for the City of Los Angeles with a specialized field of knowledge with respect to implementing the ERO. Because interpretation of the ERO falls squarely within the ERB's " ' "legislatively designated field of expertise" ' " (*Boling I*, *supra*, 5 Cal.5th at p. 912), we defer to the ERB's interpretation of the ERO unless it is clearly erroneous (see *Boling I*, at p. 904). However, we "retain final authority to ' "state the true meaning of the [ordinance]." ' " (*Id.* at p. 912.)

C.  *The ERB's Conclusion It Was Empowered To Order a Make-whole Remedy Was Not Clearly Erroneous*

The ERB ordered the City to "make whole Coalition-represented employees who have sustained any losses (including a reduced pension or other benefits) due to unilateral changes implemented on or after January 1, 2014 to the manner in which WPERP years of service are treated or who sustain any such losses in the future ... from the date any impacted employee began to experience harm (i.e., January 1, 2014) until the earliest of" the date the parties reached agreement or impasse (unless the

18

Coalition failed to request bargaining or to bargain in good faith). The ERB adopted the hearing officer's reasoning, consistent with the ERB's past precedent, that the ERB had authority to order such affirmative relief and determined a make-whole remedy was appropriate for the violation found. (See *Los Angeles Police Protective League v. Los Angeles Police Dept. and the City of Los Angeles* (1988) ERB Dec. No. U-74, at p. 6 [concluding the ERB "has broad power under the ERO to rectify the unfair employee relations practices found herein, up to and including restoration of the <u>status quo ante</u>"].) Contrary to the City's contention, the ERB's interpretation of its remedial powers was not clearly erroneous.

1. *The ERO does not limit the ERB's remedial powers to prospective cease and desist orders*

The City contends the "ERB's 'make-whole' remedy exceeded its authority and jurisdiction" and that the ERB is limited to "issuing prospective relief that the City cease committing such violations in the future." The ERB's contrary interpretation of its powers under the ERO and the MMBA was not clearly erroneous.

"Our review of local regulations is guided by the same established rules we use for statutory construction." (*Berkeley Hills Watershed Coalition v. City of Berkeley* (2019) 31 Cal.App.5th 880, 897.) In interpreting an ordinance like the ERO, " ' "our fundamental task is to 'ascertain the intent of the lawmakers so as to effectuate the purpose of the' " ' " ordinance. (*Apple Inc. v. Superior Court* (2013) 56 Cal.4th 128, 135.) "We consider first the words of [an ordinance], as the most reliable indicator of legislative intent." (*Tuolumne Jobs & Small Business Alliance v. Superior Court* (2014) 59 Cal.4th 1029,

19

1037.)

In arguing the ERO limits the ERB's remedies to prospective cease-and-desist orders, the City relies on ERO section 4.810, subdivision (f)(4). That provision states the ERB shall have the power and duty "[t]o investigate and determine the validity of charges of unfair employee relations practices, to make findings, and *to issue orders to cease and desist* which are not in conflict with other provisions of law." (§ 4.810, subd. (f)(4), italics added.) However, subdivision (f)(12) of section 4.810 additionally grants the ERB authority "[t]o perform such other duties as may be necessary to carry out the [ERB's] responsibilities under the provisions of this chapter," including adjudicating unfair employee relations practices claims. (See §§ 4.810, subd. (f)(12); 4.860, subd. (c).) The Coalition contends this provision empowers the ERB to impose additional remedies such as make-whole relief when the ERB finds the City committed an unfair labor practice.

The Coalition's interpretation of ERO section 4.810, subdivision (f)(12), is reasonable because the ERO must be harmonized with the MMBA. (See *State Dept. of Pub. Health v. Superior Ct.* (2015) 60 Cal.4th 940, 955 [" ' "A court must, where reasonably possible, harmonize statutes, reconcile seeming inconsistencies in them, and construe them to give force and effect to all of their provisions." ' "].) As discussed, the City adopted the ERO to implement the provisions of the MMBA. (See *Singletary*, *supra,* 212 Cal.App.4th at p. 39.) "[L]ocal rules [such as the ERO] cannot conflict with the MMBA. 'The MMBA deals with a matter of statewide concern, and its standards may not be undercut by contradictory rules or procedures that would frustrate its purposes. [Citations.] Local regulation is permitted only if "consistent with the purposes of the MMBA." ' " (*County of*

20

*Los Angeles, supra,* 56 Cal.4th at p. 925; accord, *Pacifica Firefighters Assn. v. City of Pacifica* (2022) 76 Cal.App.5th 758, 772.)

The MMBA dictates that the ERB "shall have the power and responsibility to take actions on … all unfair practices, and to issue determinations and orders as [the ERB] deem[s] necessary, consistent with and pursuant to the policies of this chapter." (Gov. Code, § 3509, subd. (d); see *Singletary, supra,* 212 Cal.App.4th at pp. 43-44 & fn. 4 [discussing the ERB's powers under Gov. Code, § 3509, subd. (d)].) This MMBA provision bestows broad authority on the ERB to issue orders it deems necessary to carry out the policies of the MMBA.

PERB has consistently recognized that retroactive make-whole relief serves MMBA's policy objectives. Such relief "serve[s] the dual purposes of compensating for the harm a violation causes and deterring further violations," as well as aims to provide " 'a restoration of the situation as nearly as possible to that which would have obtained but for the unfair labor practice.' " (*Service Employees Internat. Union Local 521 v. County of Santa Clara* (2024) PERB Dec. No. 2900-M, p. 25; accord *Service Employees Internat. Union, Local 99 v. The Accelerated Schools* (2023) PERB Dec. No. 2855, at p. 16 (*TAS*); see *San Diego Municipal Employees Assn. v. City of San Diego* (2015) PERB Dec. No. 2464-M, at p. 41 [imposing make-whole relief "prevents the employer from gaining a one-sided and unfair advantage in negotiations," "affirm[s] the principle of bilateralism in negotiations, which is the 'centerpiece' of the MMBA," and "vindicate[s] the authority of the exclusive representative in the eyes of employees"].)

Reading the ERO in harmony with the MMBA and PERB's

longstanding recognition that make-whole relief serves core MMBA objectives, we defer to the ERB's reasonable determination that section 4.810, subdivision (f)(12), gives it the authority to award retroactive make-whole relief when necessary to remedy an unfair employee relations practice.

D.  *A Make-whole Remedy Is Appropriate for the Failure To Engage in Effects Bargaining*

As the hearing officer recognized, "PERB has made it clear that the failure to bargain over effects is just as serious as a failure to bargain over a mandatory subject of bargaining." He cited PERB's decision in *Santa Clara County Correctional Peace Officers' Assn.* v. *County of Santa Clara* (2013) PERB Dec. No. 2321-M, at pages 23-24, which emphasized that "[t]he rule requiring effects bargaining arises from balancing the need of employers to make unfettered decision[s] about the direction of the enterprise with the rights of employees … to a voice in workplace matters related to wages, hours and terms and conditions of employment. In other words, effects bargaining is not a stepchild of decision bargaining. It is just as important as bargaining over a decision to alter the terms and conditions of employment." "In remedying effects bargaining violations, PERB recognizes that they are equally harmful as decision bargaining violations, as both disrupt and destabilize employer-employee relations by creating an imbalance in the power between management and employee organizations." (*TAS, supra*, PERB Dec. No. 2855, at p. 17.)

Make-whole remedies are customary for effects bargaining violations, just as they are for decision bargaining violations. (*Boling v. Public Employment Relations Bd.* (2019) 33 Cal.App.5th 376, 389 (*Boling II*) [typical PERB remedy for

violation of duty to engage in effects bargaining is to order such bargaining and award back pay[7] for the affected employees until bargaining results in an agreement or impasse].)  As discussed, a make-whole remedy is designed to " 'restore[] ... the situation as nearly as possible to that which would have obtained but for the unfair labor practice.' "  (*Culver City Employees Assn. v. City of Culver City* (2020) PERB Dec. No. 2731-M, at p. 50 (*Culver City Employees Assn.*); see *Engineers and Architects Assn. v. City of Los Angeles et al.* (2006) ERB Dec. No. U-185, at p. 2 ["the standard remedy for an unlawful unilateral change is restoration of the status quo ante <u>prior</u> to commencing negotiations"].)  "The usual remedy for an employer's violation of its effects bargaining obligation is an order to bargain … over the effects, with a limited backpay award to make employees whole for losses suffered and to mitigate as much as possible the imbalance in the parties' bargaining positions resulting from the employer's unlawful conduct."  (*American Federation of State, County & Municipal Employees Local 3299 et al. v. Regents of the Univ. of California* (2021) PERB Dec. No. 2783-H, pp. 31-32; accord, *TAS*, *supra*, PERB Dec. No. 2855, at p. 19 [if an employer violates its duty to bargain over effects, "full retroactive back pay may be necessary to provide adequate compensation, deterrence, and a level field for fair effects negotiations"]; *Culver City Employees*

---

[7]     The term "back pay," as used by PERB, generally refers to all forms of make-whole relief, including relief from detrimental effects on medical or retirement benefits.  (*TAS*, *supra*, PERB Dec. No. 2855, at p. 17 fn. 11; *California School Employees Assn., Chapter 32 v. Bellflower Unified School Dist.* (2022) PERB Dec. No. 2544a, at pp. 33-34.)

*Assn.*, at p. 50; *Service Employees Internat. Union Local 521 v. County of Kern et al.* (2019) PERB Dec. No. 2659-M, at p. 25.)

The ERB has previously ordered make-whole relief for a failure to engage in effects bargaining, including ordering employees' reinstatement. (See, e.g., *United Firefighters of Los Angeles City et al. v. Los Angeles City Fire Dept.* (1994) ERB Dec. No. U107, at. p. 2.) Indeed, the City concedes that "an appropriate make-whole remedy in the context of an effects bargaining case is one that seeks a restoration of the situation as nearly as possible to that which would have been obtained but for the [alleged] unfair labor practice and to thereby restore the 'economic status quo.'" The City contends, however, that the ERB's particular remedy here far exceeded the appropriate limits of a make-whole remedy. Having determined that the ERB is empowered to order make-whole remedies for the City's failure to engage in effects bargaining, we turn to the City's argument with respect to the propriety of the specific relief ordered by the ERB in this case.

E.     *The Particular Make-whole Remedy Was Not an Abuse of Discretion*

The hearing officer found the City's disregard of its obligation to engage in effects bargain troubling. While WPERP's withdrawal was the "triggering event," the City chose to "ignore the Commission's plea for a seat at the table" while negotiating with WPERP and Local 18 over the consequences of WPERP's decision that were disruptive to Coalition members. Although the hearing officer determined an order fully restoring the status quo ante was not possible, because the ERB "lack[ed] the ability to recreate or replicate the reciprocity arrangement that existed prior to WPERP's decision [to withdraw from the arrangement]

24

and the *Romero* settlement," it was necessary to impose a remedy that would "empower the Coalition to bargain for benefits that are equivalent to what existed" prior to the termination of Reciprocity. (See *Boling II*, *supra*, 33 Cal.App.5th at p. 389 [where PERB "has no power to directly undo an action," the proper "remedy is to order bargaining over the effects of the action and backpay for the affected bargaining unit employees during the bargaining process"].) The ERB adopted this conclusion and ordered the City to make whole Coalition-represented employees who sustained or would sustain any losses, including reduced pensions or other reduced benefits, due to the City's termination of Reciprocity as of January 1, 2014. This remedy would remain in force until the parties reached agreement or impasse or the Coalition failed to request bargaining or to bargain in good faith.

We review the ERB's remedial orders for abuse of discretion. (See *Boling II*, *supra*, 33 Cal.App.5th at p. 387 [reviewing PERB remedial order for abuse of discretion].) "Generally, a 'remedial order "should stand unless it can be shown that the order is a patent attempt to achieve ends other than those which can be fairly said to effectuate the policies" ' " of the animating legislation. (*Ibid.*) "Doubts as to the appropriate remedy for unfair practices, including the appropriate measure of back pay, are … resolved against the respondent whose unlawful conduct made such uncertainty possible." (*Culver City Employees Assn.*, *supra*, PERB Dec. No. 2731-M, at pp. 54-55; see *Internat. Assn. of Firefighters*, *supra*, 102 Cal.App.5th at p. 626 [faulting trial court for "insufficiently deferr[ing] to PERB's expertise" on the appropriate remedy for an MMBA violation].)

25

1. *The remedy did not conflict with other provisions of law*

The City argues that, even assuming the ERB had authority to order make-whole relief, the remedy here exceeded the permissible scope of that authority.  The City contends "[a]n order requiring the City to 'make up' the difference between the level of LACERS benefits Coalition-represented employees would have received under reciprocity and what they will now receive without reciprocity is inappropriate because … it would accomplish more than the City was legally required to do."  Focusing on the fact that ERO section 4.810, subdivision (f)(4), grants the ERB the power "*to issue orders to cease and desist which are not in conflict with other provisions of law*," it contends the ERB's remedies exceeded its powers because the remedies conflicted with other provisions of law.  (Italics added.)

The City heavily relies on our decision in *American Federation of State, County and Municipal Employees v. City of Los Angeles* (2025) 109 Cal.App.5th 179 (*AFSCME I*), concerning a related dispute arising from WPERP's suspension of Reciprocity and the City's adoption of the 2013 Ordinance terminating Reciprocity.  (*Id*. at p. 183.)  In that case, the Coalition alleged the 2013 Ordinance impaired vested contractual pension rights in violation of the California Constitution's contracts clause.  (*Id*. at p. 188.)  We rejected that claim, holding that although Reciprocity could have the effect of reducing future pension benefits for employees who transferred between the City and DWP, the employees did not possess a vested right to Reciprocity protected by the contracts clause.  (*Id*. at p. 189.)  The City argues that the ERB's make-whole remedy was inconsistent with

our holding in *AFSCME I* that Coalition employees were not legally entitled to continued Reciprocity.

Contrary to the City's contention, the ERB did not restore Reciprocity; it temporarily restored the Coalition employees to the position they were in at the point the City's duty to engage in effects bargaining arose. Even though the Coalition employees do not have a vested right to Reciprocity, they remained entitled to relief that restored their former bargaining position. The City improperly conflates the issues of whether Reciprocity is a vested right and whether the Coalition had a right to engage in effects bargaining with the City over the termination of Reciprocity. (See *California Association of Professional Scientists v. Schwarzenegger* (2006) 137 Cal.App.4th 371, 381-382 [holding constitutional issue whether a state law violated the contracts clause by impairing retirement benefits was "separate and distinct from any issue of whether the state violated its collective bargaining obligations"]; see also *American Federation of State, County and Municipal Employees, Local 101 v. City of San Jose* (2013) PERB Dec. No. 2341-M, at pp. 46-49 [distinguishing claim that city's actions interfered with a "vested employee right" from claim that city failed to bargain].)

In effects-bargaining cases, employers are often legally entitled to make the underlying decision without bargaining. Yet employees still have the right to bargain over the effects of that decision and to remedies that restore the status quo (as best possible) until the employer satisfies its duty to bargain—even though the employees are not legally entitled to have that status quo continue indefinitely. For example, although a public employer may lawfully decide to lay off employees because of financial necessity, it must still bargain over the effects of those

27

layoffs, including " ' "the timing of the layoffs and the number and identity of employees affected." ' " (*Trustees of California State Univ. v. Pub. Emp. Relations Bd.*, *supra*, 118 Cal.App.5th at p. 103; see *International Assn. of Fire Fighters, Local 188, AFL-CIO v. Public Employment Relations Bd.*, *supra*, 51 Cal.4th at p. 277.) Pending the employer's satisfaction of its duty to bargain, the ERB (or whatever employee relations commission has jurisdiction) could issue a remedial order awarding the laid-off employees back pay until the parties completed the effects-bargaining process.

Here, the ERB stressed the make-whole relief was "of a limited duration, with the make-whole remedy ending when the bargaining process ends." Under the ERB's order, the City must make affected employees whole "from the date any impacted employee[s] began to experience harm (i.e., January 1, 2014) until the earliest of" the date the parties reach an agreement, the parties reach an impasse, or the Coalition fails to request bargaining or fails to bargain in good faith. This temporary relief is not equivalent to a permanent restoration of Reciprocity.[8]

---

[8] The City further contends under section 4.1095, subdivision (k), Reciprocity was automatically suspended when WPERP withdrew from the arrangement in 2010, making the 2013 Ordinance merely "an acknowledgement of the economic reality" created by WPERP's unilateral decision and the ERB's remedy a "resuscitation of a reciprocal arrangement that had been eliminated years before." However, there is no indication the City stopped crediting WPERP service for its employees before the 2013 Ordinance became effective on January 1, 2014. Thus, WPERP's 2010 vote to suspend Reciprocity is not material to whether the make-whole remedy was appropriate.

2. *The ERB's make-whole remedy did not violate the separation of powers doctrine*

The City argues that the make-whole remedy violated the separation of powers doctrine by "invalidating" section 4.1095, subdivision (k), which the City argues permitted the City to cease providing reciprocity benefits if WPERP stopped participating in Reciprocity. The City contends the ERB's order "effectively requires the City Council to approve reciprocity in the absence of a reciprocal partner, i.e., WPERP," and thus "impermissibly encroaches on the City Council's legislative power under City Charter Section 1168 to establish LACERS benefits by ordinance." We reject the City's contention.

Under the separation of powers doctrine, courts, or a quasi-judicial agency like the ERB, " 'may not encroach on matters normally left to the Legislature.' " (*Armstrong v. Superior Ct.* (2026) 119 Cal.App.5th 768, 788; see *City of Palo Alto v. Public Employment Relations Bd.* (2016) 5 Cal.App.5th 1271, 1310-1311.) The ERB's remedial orders must be vacated if they violate the separation of powers doctrine. (See *Boling II, supra,* 33 Cal.App.5th at p. 388; see, e.g., *City of Palo Alto,* at p. 1310 [vacating PERB remedy ordering city council to rescind a resolution referring a ballot measure to voters].)[9]

---

[9] Although a labor board violates the separation of powers doctrine by ordering a legislative body to enact or rescind legislation, "[i]t is … within PERB's power to declare void a resolution passed in violation of the MMBA. [Citation.] Such a declaration 'effectively returns the parties to the status quo ante.' " (*County of Sonoma v. Public Employment Relations Bd., supra,* 80 Cal.App.5th at p. 189; accord, *Internat. Assn. of Firefighters, supra,* 102 Cal.App.5th at p. 610; *City of Palo Alto v.*

29

"[T]he separation of powers doctrine is violated only when the actions of a branch of government defeat or materially impair the inherent functions of another branch." (*In re Rosenkrantz* (2002) 29 Cal.4th 616, 662.) But "the separation-of-powers doctrine 'permits actions of one branch that may *significantly* affect those of another branch.' " (*People v. Standish* (2006) 38 Cal.4th 858, 879; see *People v. Nash* (2020) 52 Cal.App.5th 1041, 1073-1074.)

The ERB's make-whole remedy did not "invalidate" section 4.1095, subdivision (k).[10] The relief maintaining the status quo until the conclusion of the bargaining process was temporary. The make-whole remedy did not defeat or materially impair the inherent functions of the City, and thus did not violate the separation of powers doctrine.

3.     *The make-whole remedy was appropriate*

The ERB's remedy restored the parties, as nearly as practicable, to the position they occupied when the City's

---

*Public Employment Relations Bd.*, *supra*, 5 Cal.App.5th at pp. 1315-1316.)

[10]     Section 4.1095, subdivision (k), provides: "It is the intent and purpose of this section to provide, or help to provide, portability between the LACERS and the WPERP. The achievement of complete portability of benefits is dependent upon appropriate action by the governing body of the WPERP. Should the implementation of any provisions of this section be possible only if some specific action is taken by the WPERP, then, and as to such provisions only, the effect of this section shall be suspended until appropriate action has been taken by the WPERP." As discussed, in December 2013, the City adopted the 2013 Ordinance suspending Reciprocity. (§ 4.1095, subd. (l); see *AFSCME I*, *supra*, 109 Cal.App.5th at p. 188.)

30

bargaining obligation attached.  (See *TAS*, *supra*, PERB Dec. No. 2855, at p. 20 [back pay appropriate remedy for an effects bargaining obligation until the parties reach an agreement or reach an impasse]; *County of Kern et al.*, *supra,* PERB Dec. No. 2659-M, at p. 26 ["A make-whole award should be tailored 'to expunge the actual consequences' of an unfair practice, including restoration of 'the economic status quo that would have obtained but for the respondent's wrongful act.' "].)

"Although an employer engaged in effects negotiations need not bargain over the policy reasons for its decision, it cannot refuse to bargain over alternatives, as those alternatives fundamentally impact the employment effects at issue. [Citations.]  Indeed, one purpose of effects bargaining is to permit the exclusive representative an opportunity to persuade the employer to consider alternatives that may diminish the impact of the decision on employees."  (See *TAS*, *supra*, PERB Dec. No. 2855, at pp. 13-14, fn. 8, 26-28.)  Had the Coalition been afforded timely effects bargaining, it could have negotiated alternatives that might have mitigated the impact on employees. For example, the Coalition argues it could have attempted to negotiate a more affordable rate for the purchase of WPERP credits—under the 2013 Ordinance, an employee earning $100,000 annually who seeks to purchase two years of WPERP service would have to pay LACERS $60,000.

*Boling II*, *supra*, 33 Cal.App.5th 376 is instructive.  The issue in that case was the appropriateness of the remedy PERB ordered for the City of San Diego's failure to engage in effects bargaining over the mayor's decision to advance a citizens' petition reform initiative without meeting and conferring with employees' unions about the effect of the initiative on employees.

31

(*Id.* at p. 381.) The appellate court affirmed PERB's order that San Diego pay the affected employees the difference between the compensation (including retirement benefits) the employees would have received before the initiative became effective and the compensation they received after it became effective. (*Id.* at pp. 381-382.) While PERB had ordered this compensatory relief be in effect until the initiative was "no longer in effect" or another agreement was reached, the court concluded "PERB's compensatory remedy essentially invalidates the Initiative by rendering the Initiative perpetually ineffectual," improperly encroaching on constitutional and statutory law and policy matters. (*Id.* at pp. 382, 387-388.)

The court noted, "When, as here, PERB has no power to directly undo an action, PERB's remedy is not to indirectly undo the action or treat the action as if it has been or will be undone. Instead, PERB's remedy is to order bargaining over the effects of the action and backpay for the affected bargaining unit employees during the bargaining process." (*Boling II*, *supra*, 33 Cal.App.5th at p. 389.) Thus, the court limited the compensatory relief so that it would extend only until the completion of the bargaining process. The court determined "[t]his modification serves the functions PERB intended. 'It is "compensatory in that it reimburses employees for the losses they incur as a result of delays in the collective bargaining process." [Citation.] At the same time "it ... reduces the employer's financial incentive for refusing to bargain in order to avoid the expenses [the employer] would be required to pay if [the employer] had entered into a collective bargaining agreement." ' " (*Ibid.*)

Thus, the court in *Boling II* approved a make-whole remedy very similar to the one here—until the employer satisfied its duty to bargain, requiring the employer to make up the difference between the compensation and benefits the affected employees would have received before the initiative and what they received after. Once the employer discharged its bargaining duties, the compensatory remedy would cease. Likewise, the make-whole remedy the ERB imposed on the City is temporally limited to the point at which the City has discharged its obligation to engage in effects bargaining.[11]

The ERB did not abuse its discretion in fashioning a remedy designed to vindicate the Coalition's right to effects bargaining that reasonably approximates the bargaining position the parties would have occupied had the City fulfilled its statutory obligation.

F.     *The Remedy Is Not Vague or Overbroad*

The ERB also directed the City to "cease and desist from enforcing or otherwise applying against Coalition-represented

---

[11]     Contrary to the City's arguments, *Gonzales Union High School Teachers Assn., CTA/NEA v. Gonzales Union High School Dist.* (1993) PERB Dec. No. 1006 does not suggest the make-whole remedy here was inappropriate. There, PERB declined to require the employer to pay increased health insurance costs as part of a make-whole remedy because doing so would require the employer to exceed an express contribution cap contained in the parties' collective bargaining agreement. (*Id.* at pp. 22-23.) Here, by contrast, the Coalition never agreed to any contractual limitation governing retirement benefits if Reciprocity ended. Moreover, the City has made no showing the make-whole remedy here would "lead to the absurd result" of jeopardizing the benefits at issue, as was the case in *Gonzales*. (*Ibid.*)

33

employees the [Administrative Code] provisions that address, *for any purpose*, how to treat periods of service with WPERP for employees who move from a WPERP-covered position to a LACERS-covered position on or after January 1, 2014." The City argues the order is impermissibly vague because it does not identify the specific Administrative Code provisions to which it applies and is overbroad because it uses the phrase "for any purpose."

An injunction is impermissibly vague only if it is "set forth ' "in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." ' " (*People v. Uber Technologies, Inc.* (2020) 56 Cal.App.5th 266, 316; accord, *People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1116.) "[W]e do not pursue the inquiry in the abstract. To be considered unconstitutionally vague, an injunction must suffer from vagueness in all its applications [citation], since '[a] contextual application of otherwise unqualified legal language may supply the clue to a law's meaning, giving facially standardless language a constitutionally sufficient concreteness.' " (*Uber Technologies*, at p. 316; see also *In re Sheena K.* (2007) 40 Cal.4th 875, 890 [due process requires only that an order be sufficiently precise for a person to know what is required].)

Although the ERB's order does not list every relevant Administrative Code provision, it clearly identifies the category of provisions—those governing the treatment of WPERP service for employees transferring to LACERS-covered positions after January 1, 2014. An injunction "need not etch forbidden actions with microscopic precision, but may instead draw entire categories of proscribed conduct." (*People ex rel. Gascon v.*

34

*HomeAdvisor, Inc.* (2020) 49 Cal.App.5th 1073, 1083.) Here, the category is readily identifiable: the post-2013 Administrative Code provisions implementing the suspension of Reciprocity. Indeed, the City identifies no provision that it cannot determine is either included or excluded by the order.

Moreover, the order must be read in light of the ERB's findings. The ERB specifically identified the subjects requiring effects bargaining, including disability retirement, pension calculations, retiree health subsidies, leave rights, and employee transfers. The remedial order simply tracks those subjects by directing the City not to apply the post-2013 changes affecting WPERP service credit until it satisfies its bargaining obligations. (*See People ex rel. Gascon v. HomeAdvisor, Inc.*, *supra*, 49 Cal.App.5th at p. 1084 [" 'the language of the injunction must be interpreted in light of the record which discloses the kind of conduct that was sought to be enjoined' "].)

Nor does the phrase "for any purpose" render the order overbroad. The ERB found that the City's bargaining obligation extended to effects flowing from the suspension of Reciprocity, not merely to pension calculations. Because the unlawful conduct affected multiple aspects of how WPERP service was treated under LACERS, the ERB reasonably framed the remedy in broad terms. The City again does not identify any specific application of the order that it cannot understand or administer.

The City also contends the remedy is overbroad because the ERB "expressly found that the City was obligated under … section 4.1095[, subdivision ](k) to stop counting WPERP service for LACERS benefits once WPERP withdrew from reciprocity," "but the cease-and-desist order prohibits the City from enforcing [Administrative Code] provisions governing WPERP service 'for

35

any purpose.' " This merely repackages the City's contention that, once WPERP suspended Reciprocity, the City could not lawfully be required to continue recognizing any aspect of it. As we have explained, that argument conflates the Coalition's lack of vested rights with the distinct purpose of make-whole relief— to restore the parties, as nearly as possible, to the status quo that existed when the City's duty to bargain arose. For the reasons already discussed, we reject that argument here as well.

G.      *The Trial Court Did Not Err in Awarding the Coalition Attorney Fees*

1.      *Applicable law and standard of review*

"Code of Civil Procedure section 1021.5 is an exception to the general rule that parties in litigation pay their own attorney fees. [Citation.] The statute encourages ' "litigants to pursue meritorious public interest litigation vindicating important rights and benefitting a broad swath of citizens, and ... achieves this aim by compensating successful litigants with an award of attorney's fees." ' " (*McDoniel v. Kavry Management, LLC* (2025) 114 Cal.App.5th 949, 976; see *Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1224 [section 1021.5 is aimed at "solving the problem of the nonaffordability of litigation that will benefit the public but cannot pay its own way"].) As relevant here, Code of Civil Procedure section 1021.5 authorizes an award of attorney fees " 'to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to

36

make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any.' " (*Raptors Are the Solution v. CropLife America* (2026) 120 Cal.App.5th 237, 249-250 (*Raptors Are the Solution*).)

We generally review rulings on fee requests under Code of Civil Procedure section 1021.5 for abuse of discretion. (*Conservatorship of Whitley*, *supra*, 50 Cal.4th at p. 1213; *Make UC A Good Neighbor v. Regents of University of California* (2025) 117 Cal.App.5th 282, 287 (*Make UC A Good Neighbor*).)

> 2. *The court did not abuse its discretion in determining the Coalition was a successful party*

The City first argues the trial court erroneously concluded the Coalition was the "successful party." According to the City, the Coalition prevailed on only one of four substantive issues brought before the ERB and failed to obtain most of the relief it originally sought.

" 'The "successful party" under [Code of Civil Procedure] section 1021.5 is "the party to litigation that achieves its objectives." ' " (*Raptors Are the Solution*, *supra*, 120 Cal.App.5th at p. 261, quoting *Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 571; see *Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1292 [a plaintiff is successful if it succeeds on any significant issue and achieves some benefit sought].) "The inquiry is both 'pragmatic' and 'broad.' [Citation.] To be successful, a party need not obtain a favorable final judgment [citations] nor succeed on all its claims." (*Make UC A Good Neighbor*, *supra*, 117 Cal.App.5th at p. 288; see *City of Oakland v. Oakland Police & Fire Retirement System* (2018) 29 Cal.App.5th 688, 708.)

The City takes too narrow a view of the Coalition's objectives and the relief it obtained. The Coalition alleged the

37

City's failure to negotiate in good faith violated sections 4.830, subdivision (a), 4.857, and 4.860, subdivisions (a)(1) and (3), and constituted an unfair employee relations practice. As relief, it sought orders requiring the City to (1) cease refusing to meet and confer over Reciprocity and its benefits, (2) rescind unilateral changes to retirement and retiree medical benefits and transfer rights, (3) refrain from making similar unilateral changes in the future, (4) cease interfering with rights protected by the ERO, and (5) make affected employees whole, and post notices acknowledging its violations.[12]

The Coalition broadly achieved its goals. The ERB determined the City failed to meet and confer in violation of ERO sections 4.830, subdivision (a), and 4.860, subdivision (a)(3)— two of the three statutory provisions the Coalition identified. The Board also granted relief consistent with the Coalition's principal requests by ordering the City to cease and desist from its unlawful failure to negotiate and to make affected employees whole for losses resulting from the violations.

Even if the Coalition did not obtain every form of relief it requested, " '[t]he critical fact is the impact of the action,' " and parties " 'may be considered successful if they succeed on *any significant issue* in the litigation that achieves some of the *benefit they sought* in bringing suit.' " (*Make UC A Good Neighbor*, *supra*, 117 Cal.App.5th at p. 288; see *Raptors Are the Solution*, *supra*, 120 Cal.App.5th at p. 261 [a "party need not succeed on all of its claims"].) The trial court therefore reasonably concluded that, "while the Coalition did not prevail on all issues," it "did

---

[12] Although the Coalition sought these five bases for relief, the City only references four.

prevail with respect to the requirement to bargain over the effects of the suspension of reciprocity and the make-whole remedy starting from January 1, 2014," which were the "crux" and the "significant issue" in the unfair employee relations practice charge.

      3.    *The court did not abuse its discretion in determining the Coalition vindicated an important public right*

     "Having established the threshold requirement" that the Coalition was a successful party, "the first part of the three-prong inquiry is whether 'the litigation resulted in the enforcement of an important right affecting the public interest.' " (*Grossmont Union High School Dist. v. Diego Plus Education Corp.* (2023) 98 Cal.App.5th 552, 576.) "The 'important public right' can have any legal source, 'constitutional, statutory or other.' " (*Ibid.*) "When determining whether a litigant has vindicated an important right affecting the public interest, '[t]he "judiciary [must] exercise judgment in attempting to ascertain the 'strength' or 'societal importance' of the right involved." [Citation.] "The strength or societal importance of a particular right generally is determined by realistically assessing the significance of that right in terms of its relationship to the achievement of fundamental legislative goals." ' " (*City of Oakland v. Oakland Police & Fire Retirement System, supra,* 29 Cal.App.5th at p. 710.)

     The City contends the trial court erred in determining the Coalition vindicated an important public right because the "ERB award of an erroneous 'make-whole' remedy based on an alleged failure to engage in effects bargaining after the adoption of the Ordinance is a narrow dispute between a labor organization and a city government that does not vindicate broader principles of

39

law."  However, the City "adopts an unduly narrow definition of the relevant public interest and the nature of the benefit achieved by the litigation."  (*Let Them Choose v. San Diego Unified School Dist.* (2024) 103 Cal.App.5th 953, 963.)  The trial court correctly concluded that in ensuring compliance with the duty to bargain under the MMBA, the litigation enforced an important public right that promotes fair labor relations in the public sector.  (See *Indio Police Command Unit Assn. v. City of Indio* (2014) 230 Cal.App.4th 521, 542 [affirming attorney fee award under Code Civ. Proc., § 1021.5 in action enforcing important public right to bargain under the MMBA]; *Los Angeles Police Protective League v. City of Los Angeles* (1986) 188 Cal.App.3d 1, 12-14 [lawsuit to enforce meet and confer obligations under the MMBA vindicated an important public right]; see also *People Ex Rel. Seal Beach Police Officers Assn. v. City of Seal Beach* (1984) 36 Cal.3d 591, 594 [affirming attorney fee award under Code Civ. Proc., § 1021.5 in suit to enforce meet and confer rights under MMBA].)

      4.     *The court did not abuse its discretion in determining the Coalition obtained a significant benefit for the public or a large group of people*

"The second prong of the analysis under Code of Civil Procedure section 1021.5 is whether ' "a significant benefit has been conferred on the general public or a large class of individuals." ' "  (*Grossmont Union High School Dist. v. Diego Plus Education Corp.*, *supra*, 98 Cal.App.5th at p. 579.)  " ' " [T]he "significant benefit" that will justify an attorney fee award need not represent a "tangible" asset or a "concrete" gain but, in some cases, may be recognized simply from the effectuation of a fundamental constitutional or statutory policy.'

40

[Citation.] The benefit may be conceptual or doctrinal [citation], and … 'the litigation underlying the [Code of Civil Procedure] section 1021.5 award can involve rights or benefits that are somewhat intangible.' " ' " (*Id.* at pp. 579-580.)

The City asserts the litigation did not confer a significant public benefit because the decision is "not 'a ringing declaration of rights of all or most' of public employees in the City of Los Angeles" and instead "only applies to a tiny minority of those employees, who have transferred from WPERP to LACERS since January 1, 2014." However, the trial court could reasonably conclude that clarifying the scope of the ERB's remedial authority and the City's bargaining obligations significantly benefits not only the affected Coalition employees but also other City employees and bargaining units confronting similar disputes. (See *Indio Police Command Unit Assn. v. City of Indio, supra*, 230 Cal.App.4th at pp. 534-544 [trial court reasonably concluded that litigation benefitted not just the union and its 14 members, "but also benefitted other employee unions within the City, whose employees the City has stated were being subjected to similar reorganization plans"].)

The trial court did not abuse its discretion in awarding the Coalition attorney fees under Code of Civil Procedure section 1021.5.

5.      *The Coalition is entitled to its attorney fees on appeal*

The Coalition also requests its attorney fees on appeal. "As in the trial court, attorney's fees on appeal are recoverable if authorized by contract, statute, or law. [Citation.] A statute authorizing an award of attorney's fees in the trial court ordinarily authorizes an award of fees incurred on appeal unless the statute specifically provides otherwise." (*Baer v. Tedder*

41

(2025) 115 Cal.App.5th 1139, 1150.)  As the prevailing party on appeal, the Coalition is entitled to an award of attorney fees for the appeal under section 1021.5.  (See *Center for Biological Diversity v. County of San Bernardino* (2010) 185 Cal.App.4th 866, 901.)

## DISPOSITION

The judgment and attorney fees order are affirmed.  The trial court is directed to award the Coalition its reasonable attorney fees and costs on appeal.  (*Center for Biological Diversity v. County of San Bernardino, supra,* 185 Cal.App.4th at p. 901.)


STONE, J.

We concur:


MARTINEZ, P. J.


SEGAL, J.